UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANTONIO SHELBY,
CHRISTIAN CARPENTER,

        Plaintiffs,

Case No.
Hon.

v.

ROBERT MOSS, MARSALIS TURNER,
and CITY OF DETROIT,

        Defendants.

---

MOSS & COLELLA, P.C.
BY: A. VINCE COLELLA (P49747)
    MELANIE J. DUDA (P77165)
    MATTHEW C. MCCANN (P85286)
Attorneys for Plaintiff
28411 Northwestern Hwy, Suite 1150
Southfield, MI 48034
248-945-0100/F: 248-945-1801
vcolella@mosscolella.com

---

## COMPLAINT AND DEMAND FOR JURY TRIAL

There is no other pending or resolved
civil action arising out of the transaction or
occurrence alleged in this Complaint.

    /s/ A. Vince Colella
    A. Vince Colella (P49747)

NOW COMES Plaintiffs, ANTONIO SHELBY and CHRISTIAN CARPENTER, by and through their attorneys, MOSS & COLELLA, P.C., by A. VINCE COLELLA, and for their Complaint and Demand for Jury Trial, state as follows:

1

## PRELIMINARY STATEMENT

1. This case arises from the excessive force utilized by ROBERT MOSS and MARSALIS TURNER, members of the Police Department of the City of Detroit ("DPD") on October 4, 2022. Plaintiffs ANTONIO SHELBY and CHRISTIAN CARPENTER are the victims of excessive force having been tased on 3rd Street between Martin Luther King Boulevard and Brainard Street in the City of Detroit. Plaintiffs bring these federal and state law claims to establish recognition that the tasing was unjust and contrary to established law; to secure compensation for these wrongful acts; and to prevent future instances of wrongful and excessive force.

## PARTIES, JURISDICTION, AND VENUE

2. Plaintiff, ANTONIO SHELBY ("SHELBY") resides in the County of Wayne, State of Michigan.

3. Plaintiff, CHRISTIAN CARPENTER ("CARPENTER") resides in the County of Wayne, State of Michigan.

4. Upon information and belief, Defendant ROBERT MOSS ("MOSS") is a resident of the State of Michigan, and an officer of the DPD. At all material times, Defendant MOSS was acting under color of state law.

5. Upon information and belief, Defendant MARSALIS TURNER ("TURNER") is a resident of the State of Michigan, and an officer of the DPD. At all material times, Defendant TURNER was acting under color of state law.

6. Defendant, CITY OF DETROIT, is a municipal corporation organized under the laws of the State of Michigan, charged with operating the DPD, within the County of Wayne. At all material times, Defendant CITY OF DETROIT was acting under color of state law.

7. This is a civil rights action for damages brought pursuant to 42 U.S.C. §§ 1983, 1985, and 1986, and the Fourth and Fourteenth Amendments to the United States Constitution and related state law claims, against the Defendants MOSS and TURNER for their wrongful acts and for Defendant CITY OF DETROIT's unconstitutional policies and procedures, resulting in serious and potentially permanent injuries to Plaintiffs SHELBY and CARPENTER.

8. Jurisdiction is proper in this matter pursuant to 28 U.S.C. §§ 1331, 1343, and 1367.

9. The conduct or occurrence giving rise to this cause of action is the tasing of Plaintiffs SHELBY and CARPENTER on October 4, 2022, on 3rd Street between Martin Luther King Boulevard and Brainard Street in the City of Detroit, County of Wayne.

10. Pursuant to 28 U.S.C. §§ 1391(b)(2), venue is proper before this Honorable Court, as the substantial portion of the aforementioned events took place within this judicial district.

## COMMON ALLEGATIONS

11. Plaintiffs adopt and incorporate by reference each and every allegation in each preceding paragraph as though fully set forth herein.

### The Initial Encounter with the Detroit Police Department

12. During the day of October 4, 2022, Plaintiffs SHELBY and CARPENTER were together at Carpenter's home in the Brightmoor section of Detroit.

13. At around 9 PM, Plaintiffs SHELBY and CARPENTER traveled together from the Brightmoor section of Detroit to the apartment of a friend located in the Cass Corridor Section of Detroit, between 2nd and 3rd Avenues and MLK Boulevard and Brainard Street.

3

14. Plaintiff CARPENTER was driving, and Plaintiff SHELBY was in the front passenger seat of the car.

15. Plaintiffs SHELBY and CARPENTER were traveling north on 3rd Avenue and pulled in and parked in front of an apartment building located at 3548 3rd Avenue. As Plaintiffs were pulling up to the apartment building, Shelby called the woman they were coming to visit on the phone to let her know they were there.

16. A DPD vehicle traveling south on 3rd Avenue passed the vehicle which Plaintiff's vehicle, quickly made a U-turn in the intersection absent lights and sirens and traveled back north and parked directly behind the parked vehicle.

17. Before the DPD vehicle parked, Plaintiff SHELBY had exited the vehicle Carpenter was driving, and was standing up on the sidewalk as a pedestrian speaking with the woman they came to visit.

18. Recognizing the aggressive nature of the officers' approach, the woman took out her cell phone and began video recording the encounter.

19. Defendants MOSS and TURNER approached the vehicle along with fellow officer, Jurrell Evans. Defendant MOSS approached Plaintiff SHELBY on the sidewalk, while Defendant TURNER approached Plaintiff CARPENTER from the driver's side of the vehicle where he was seated with his hands visibly displayed on the steering wheel.

### Defendant Turner's Encounter with Plaintiff Carpenter

20. Defendant TURNER aggressively approached Plaintiff CARPENTER commanding him to shut off the car and produce a driver's license and registration. During this interaction, Carpenter made certain to keep one hand (his left) visible, deliberately holding it up, while he was using his other hand (his right) to retrieve his valid government identification.

4

21. Plaintiff CARPENTER then handed the Defendant TURNER his identification.

22. Next, Defendant TURNER commanded Plaintiff CARPENTER to put his hands on the vehicle's dashboard; Carpenter complied.

23. Plaintiff CARPENTER continued to comply with the Defendant TURNER'S instructions. During Turner's encounter with Carpenter, Plaintiff SHELBY fell into the vehicle.

24. Despite Plaintiff CARPENTER's uninterrupted complete compliance, Defendant TURNER tased Carpenter and directed him to get out of the vehicle and onto the street next to the driver's side of the vehicle.

25. Plaintiff CARPENTER was then handcuffed.

26. Plaintiff CARPENTER was left handcuffed face down on the street for a little over a minute after being tased, after which time he was picked up off the street.

27. A few minutes later, Plaintiff CARPENTER was moved from the street on the driver's side of the vehicle he was driving to the back seat of a DPD SUV.

28. While Plaintiff CARPENTER was in the back seat of the DPD SUV, Carpenter was told by the officers, "You ain't getting arrested."

29. Plaintiff CARPENTER was later moved while handcuffed from the back of DPD SUV where he had been for approximately 20 minutes and patted down and searched on the street, and then forcibly placed into a marked white DPD vehicle.

30. Plaintiff CARPENTER suffered terror and fear as Defendant TURNER tased him. Carpenter also suffered physical injury, emotional distress, psychological trauma, conscious pain and suffering, loss of society and companionship, and ultimately serious and permanent injury as the result of the aforementioned conduct.

### Defendant Moss' Encounter with Plaintiff Shelby

31. Plaintiff SHELBY was initially confronted by Defendant MOSS and Officer Evans while standing on the sidewalk several feet from the passenger side door of Plaintiff CARPENTER'S vehicle.

32. Plaintiff ANTONIO SHELBY then sat back in the passenger seat of the vehicle, and closed the door, while Defendant MOSS and Officer Evans spoke to the woman on the sidewalk.

33. Plaintiff SHELBY then attempted to exit the vehicle, when Defendant MOSS grabbed his arm and pressed/shoved Shelby against the vehicle; in response, Shelby remarked "I didn't do anything."

34. Plaintiff SHELBY then bent down by the passenger side of the vehicle, and Defendant MOSS kept his hands around Shelby's waist. Officer Jurrell then placed his hand on Shelby's left shoulder.

35. Nearly simultaneously to the officers placing their hands upon him, Plaintiff SHELBY fell backwards into the passenger side of the vehicle.

36. At that point, Defendant MOSS deployed his taser striking Plaintiff SHELBY in the face.

37. Plaintiff SHELBY fell to the ground on the sidewalk, with coils discharged from the taser draped over his head and running down the front of his body.

38. Plaintiff SHELBY was left unattended on the sidewalk. For the next several minutes he writhed in pain and yelled out concerns about his heart; that he was going to die; and "I can't breathe – Please don't . . . let me die like this[.]"

39. Plaintiff SHELBY had a coil from the taser stuck and lodged in his lip; one of the DPD officers told him "Sir I can't take it out of your lip." Shelby screamed out " I don't want to die[.]"

40. Plaintiff SHELBY pleaded with the Defendants for help.

41. Plaintiff SHELBY suffered terror and fear as Defendant MOSS tased him. Shelby also suffered physical injury, emotional distress, psychological trauma, conscious pain and suffering, loss of society and companionship, and ultimately serious and permanent injury as the result of the aforementioned conduct.

### COUNT I: DEPRIVATION OF CIVIL RIGHTS IN VIOLATION OF 42 U.S.C. § 1983 AGAINST DEFENDANT TURNER AS TO PLAINTIFF CARPENTER (FOURTH AMENDMENT - EXCESSIVE FORCE)

42. Plaintiffs adopt and incorporate by reference each and every allegation in each preceding paragraph as though fully set forth herein.

43. Pursuant to 42 U.S.C. § 1983 and the Fourth Amendment to the United States Constitution, Defendant TURNER owed Plaintiff CARPENTER a duty to act prudently, with reasonable care, and otherwise to avoid unreasonable and excessive force.

44. A reasonable officer in the position of Defendant TURNER at the time of this incident – i.e., prior to the use of excessive force against Plaintiff CARPENTER – would have known, in light of existing law, that the unlawfulness of this action was apparent under the circumstances, would be a violation of clearly established law, and of Carpenter's constitutional rights against unlawful excessive force.

45. As a direct and proximate result of the aforementioned conduct, Plaintiff CARPENTER suffered terror and fear as Defendant TURNER tased him. Carpenter also suffered physical injury, emotional distress, psychological trauma,

7

conscious pain and suffering, loss of society and companionship, and ultimately serious and permanent injury as the result of the aforementioned conduct.

COUNT II: DEPRIVATION OF CIVIL RIGHTS
IN VIOLATION OF 42 U.S.C. § 1983 AGAINST
DEFENDANT MOSS AS TO PLAINTIFF SHELBY
(FOURTH AMENDMENT - EXCESSIVE FORCE)

46. Plaintiffs adopt and incorporate by reference each and every allegation in each preceding paragraph as though fully set forth herein.

47. Pursuant to 42 U.S.C. § 1983 and the Fourth Amendment to the United States Constitution, Defendant MOSS owed Plaintiff SHELBY a duty to act prudently, with reasonable care, and otherwise to avoid unreasonable and excessive force.

48. A reasonable officer in the position of Defendant MOSS at the time of this incident – i.e., prior to the use of excessive force against Plaintiff SHELBY – would have known, in light of existing law, that the unlawfulness of this action was apparent under the circumstances, would be a violation of clearly established law, and of Shelby's constitutional rights against unlawful excessive force.

49. As a direct and proximate result of the aforementioned conduct, Plaintiff SHELBY suffered terror and fear as Defendant MOSS tased him. Shelby also suffered physical injury, emotional distress, psychological trauma, conscious pain and suffering, loss of society and companionship, and ultimately serious and permanent injury as the result of the aforementioned conduct.

COUNT III: *MONELL* LIABILITY AGAINST
DEFENDANT CITY OF DETROIT AS TO PLAINTIFFS CARPENTER AND SHELBY
(UNCONSTITUTIONAL POLICY OR PROCEDURE IN VIOLATION OF 42 U.S.C. § 1983)

50. Plaintiffs adopt and incorporate by reference each and every allegation in each preceding paragraph as though fully set forth herein.

51. Defendant CITY OF DETROIT had an unconstitutional policy, practice, and/or custom of allowing officers to use excessive force against citizens.

52. Defendant CITY OF DETROIT's above listed polices, practices, and/or customs regarding the use of excessive force against non-dangerous subjects was the moving force and proximate cause of injuries to Plaintiffs CARPENTER and SHELBY.

53. Additionally, Defendant CITY OF DETROIT had an unconstitutional policy, practice, and/or custom of failing to train officers regarding the proper use of force and/or to adequately investigate and discipline police officers who used excessive force on citizens.

54. Defendant CITY OF DETROIT's above listed failure to adequately train, investigate, and discipline officers using excessive force was the moving force and proximate cause of injuries to Plaintiffs CARPENTER and SHELBY.

55. As a direct and proximate result of the aforementioned conduct, Plaintiff CARPENTER suffered terror and fear as Defendant TURNER tased him. Carpenter also suffered physical injury, emotional distress, psychological trauma, conscious pain and suffering, loss of society and companionship, and ultimately serious and permanent injury as the result of the aforementioned conduct.

56. As a direct and proximate result of the aforementioned conduct, Plaintiff SHELBY suffered terror and fear as Defendant MOSS tased him. SHELBY also suffered physical injury, emotional distress, psychological trauma, conscious pain and suffering, loss of society and companionship, and ultimately serious and permanent injury as the result of the aforementioned conduct.

### COUNT IV: ASSAULT AND BATTERY AGAINST DEFENDANT TURNER AS TO PLAINTIFF CARPENTER (IN VIOLATION OF STATE LAW)

57. Plaintiffs adopt and incorporate by reference each and every allegation in each preceding paragraph as though fully set forth herein.

58. The aforementioned actions and conduct of Defendant TURNER as incorporated herein, were willful, wanton, intentional and/or reckless.

59. The aforementioned actions and conduct of Defendant TURNER as incorporated herein, created a reasonable apprehension of an immediate threat of harm and/or offensive touching to Plaintiff CARPENTER.

60. The aforementioned actions and conduct by Defendant TURNER as incorporated herein, did in fact constitute an offensive and harmful touching of Plaintiff CARPENTER.

61. Defendant TURNER knew or should have known that his aforementioned actions and/or conduct would cause injury to Plaintiff CARPENTER and furthermore, his conduct did in fact cause the aforementioned injury to Carpenter.

62. As a direct and proximate result of the aforementioned conduct, Plaintiff CARPENTER suffered terror and fear as Defendant TURNER tased him. Carpenter also suffered physical injury, emotional distress, psychological trauma, conscious pain and suffering, loss of society and companionship, and ultimately serious and permanent injury as the result of the aforementioned conduct.

### COUNT V: ASSAULT AND BATTERY AGAINST DEFENDANT MOSS AS TO PLAINTIFF SHELBY (IN VIOLATION OF STATE LAW)

63. Plaintiffs adopt and incorporate by reference each and every allegation in each preceding paragraph as though fully set forth herein.

64. The aforementioned actions and conduct of Defendant MOSS as incorporated herein, were willful, wanton, intentional and/or reckless.

65. The aforementioned actions and conduct of Defendant MOSS as incorporated herein, created a reasonable apprehension of an immediate threat of harm and/or offensive touching to Plaintiff SHELBY.

66. The aforementioned actions and conduct by Defendant MOSS as incorporated herein, did in fact constitute an offensive and harmful touching of Plaintiff SHELBY.

67. Defendant MOSS knew or should have known that his aforementioned actions and/or conduct would cause injury to Plaintiff SHELBY and furthermore, his conduct did in fact cause the aforementioned injury to Shelby.

68. As a direct and proximate result of the aforementioned conduct, Plaintiff SHELBY suffered terror and fear as Defendant MOSS tased him. Shelby also suffered physical injury, emotional distress, psychological trauma, conscious pain and suffering, loss of society and companionship, and ultimately serious and permanent injury as the result of the aforementioned conduct.

### COUNT VI: GROSS NEGLIGENCE AGAINST DEFENDANT TURNER AS TO PLAINTIFF CARPENTER (IN VIOLATION OF STATE LAW)

69. Plaintiffs adopt and incorporate by reference each and every allegation in each preceding paragraph as though fully set forth herein.

70. At all material times, Defendant TURNER as City of Detroit police officer, owed a duty to all persons, including Plaintiff CARPENTER, to avoid wanton, willful, or reckless misconduct; to avoid grossly negligent conduct; and to avoid conduct so reckless as to demonstrate a substantial lack of concern as to whether injury results.

11

71. Notwithstanding the aforementioned duties, Defendant TURNER was grossly negligent, wanton, and/or willful in breaching the aforementioned duties in one or more of the following ways:

   a. Discharging his taser when he knew or should have known that he was not in imminent or immediate harm; Plaintiff CARPENTER did not pose a physical threat to their safety or that of other officers or civilians; and under objective visible conditions that posed a substantial risk of serious injury and/or death; and

   b. Other breaches of duty identified during the course of discovery.

72. As a direct and proximate result of the aforementioned conduct, Plaintiff CARPENTER suffered terror and fear as Defendant TURNER tased him. Carpenter also suffered physical injury, emotional distress, psychological trauma, conscious pain and suffering, loss of society and companionship, and ultimately serious and permanent injury as the result of the aforementioned conduct.

### COUNT VII: GROSS NEGLIGENCE AGAINST DEFENDANT MOSS AS TO PLAINTIFF SHELBY (IN VIOLATION OF STATE LAW)

73. Plaintiffs adopt and incorporate by reference each and every allegation in each preceding paragraph as though fully set forth herein.

74. At all material times, Defendant MOSS, as City of Detroit police officer, owed a duty to all persons, including Plaintiff SHELBY, to avoid wanton, willful, or reckless misconduct; to avoid grossly negligent conduct; and to avoid conduct so reckless as to demonstrate a substantial lack of concern as to whether injury results.

75. Notwithstanding the aforementioned duties, Defendant MOSS was grossly negligent, wanton, and/or willful in breaching the aforementioned duties in one or more of the following ways:

    a. Discharging his taser when he knew or should have known that he were not in imminent or immediate harm; Plaintiff SHELBY did not pose a physical threat to his safety or that of other officers or civilians; and under objective visible conditions that posed a substantial risk of serious injury and/or death; and

    b. Other breaches of duty identified during the course of discovery.

76. As a direct and proximate result of the aforementioned conduct, Plaintiff SHELBY suffered terror and fear as Defendant MOSS tased him. Shelby also suffered physical injury, emotional distress, psychological trauma, conscious pain and suffering, loss of society and companionship, and ultimately serious and permanent injury as the result of the aforementioned conduct.

## RELIEF AND DAMAGES REQUESTED

WHEREFORE, Plaintiffs CARPENTER and SHELBY respectfully request that this Honorable Court enter judgment in their favor against Defendant TURNER and MOSS and CITY OF DETROIT, and award the following damages:

    A. Compensatory damages in excess of $75,000.00.

    B. Punitive damages against Defendants MARSALIS TURNER and ROBERT MOSS only;

    C. Costs incurred and attorney's fees pursuant to 42 U.S.C § 1988;

    D. Prejudgment interest; and

    E. Any other relief this Court deems equitable and just.

Respectfully submitted,

MOSS & COLELLA, P.C.

BY: /s/ A. Vince Colella
A. VINCE COLELLA (P49747)
Attorney for Plaintiff
28411 Northwestern Hwy, Suite 1150
Southfield, MI 48034
(248)-945-0100
DATED: June 28, 2023                vcolella@mosscolella.com

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANTONIO SHELBY,
CHRISTIAN CARPENTER,

        Plaintiffs,

Case No.
Hon.

v.

ROBERT MOSS, MARSALIS TURNER,
and CITY OF DETROIT,

        Defendants.

---

MOSS & COLELLA, P.C.
BY: A. VINCE COLELLA (P49747)
    MELANIE J. DUDA (P77165)
    MATTHEW C. MCCANN (P85286)
Attorneys for Plaintiff
28411 Northwestern Hwy, Suite 1150
Southfield, MI 48034
248-945-0100/F: 248-945-1801
vcolella@mosscolella.com

---

## DEMAND FOR JURY TRIAL

NOW COMES Plaintiffs, ANTONIO SHELBY and CHRISTIAN CARPENTER, by and through their attorneys, MOSS & COLELLA, P.C., by A. VINCE COLELLA, and hereby respectfully requests jury trial in the above captioned matter.

        Respectfully submitted,

        MOSS & COLELLA, P.C.

        BY: /s/ A. Vince Colella
        A. VINCE COLELLA (P49747)
        Attorney for Plaintiff
        28411 Northwestern Hwy, Suite 1150
        Southfield, MI 48034
        (248)-945-0100
DATED: June 28, 2023        vcolella@mosscolella.com